UNITED STATES DISTRICT COURT <u>**For Online Publication Only**</u>
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WAYNE FRAZER,

                     Plaintiff,

             -against-

BAKERY & DRIVERS LOCAL 550 AND
INDUSTRIES HEALTH BENEFIT AND
PENSION PLAN,

                  Defendant.
-------------------------------------------------------------X

<u>**MEMORANDUM AND ORDER**</u>
21-CV-00402 (JMA)(AYS)

**AZRACK, United States District Judge:**

      The Bakery & Drivers Local 550 and Industry Health Benefit and Pension Fund ("Defendant") has filed a motion to dismiss the Amended Complaint filed <u>pro</u> <u>se</u> by plaintiff Wayne Frazer ("Plaintiff").  (<u>See</u> Mot. to Dismiss, ECF No. 16; Am. Compl., ECF No. 9.) Plaintiff has opposed the motion.  (<u>See</u> Pl. Opp., ECF No. 16-5.)  For the reasons that follow, the Court finds that the Amended Complaint fails to state a claim upon which relief may be granted. Accordingly, the Amended Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Clerk of the Court shall enter judgment accordingly and close this case.

## I.      BACKGROUND

      Plaintiff commenced this action on January 22, 2021 by filing a complaint together with an application to proceed <u>in forma pauperis</u> ("IFP").  (Compl., ECF No. 1; IFP App., ECF No. 2.) In August 2022, the Court granted Plaintiff's request for IFP.  (<u>See</u> ECF Nos. 6-7.)  However, in accordance with the screening requirement of IFP complaints set forth in 28 U.S.C. § 1915(e)(2), the Court <u>sua sponte</u> dismissed the complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and with leave to file an amended complaint.  (<u>See</u> ECF No. 7.) More specifically, Plaintiff had alleged, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, <u>et seq.</u> ("ERISA"), that the Defendant had improperly denied his

claim for disability pension benefits.   (See Compl., ECF No. 1, ¶¶ II.A., III.)   However, Plaintiff's sparse complaint was devoid of any factual allegations and, thus, did not comply with Federal Rule of Civil Procedure 8's requirements.   (Id.)   Indeed, the Court explained that Plaintiff's "mere citation of the ERISA statute and conclusory allegation that '[t]he Defendant violated the Plaintiff rights of disability pension' were insufficient to satisfy Rule 8's requirements."   (Order, ECF No. 7 at 4 (quoting Compl., ECF No. 1 ¶¶ III.)).   After requesting and receiving an extension of time to file an amended complaint, on September 30, 2021, Plaintiff timely filed an amended complaint.   (See Am. Compl., ECF No. 9.)

## A.   **The Amended Complaint**

Plaintiff's amended complaint is against Defendant and invokes this Court's jurisdiction pursuant to both 28 U.S.C. §§ 1331 and 1332.   (See id. ¶ II.A-B.)   Plaintiff alleges that his claims again arise pursuant to ERISA § 1001, et seq., that he is a Florida resident and citizen, and that the Defendant is incorporated under the laws of the state of New York with its principal place of business also in New York.   (Id. ¶ II.B.1-2(b); and at 8 ¶¶ 4-5.)   Plaintiff alleges that the amount in controversy is "$142,500.00 for a retroactive pension."   (Id. ¶ II.B.3.)

According to the amended complaint,[1] Plaintiff was an employee of the Hartz Mountain Corporation ("Hartz") and "worked" there from August 3, 1987 through March 27, 1996.   (Id. a 8 ¶ 6.)   He was also a member of the Teamster Union, Local 550 (the "Union") during this time. (Id. at 8, ¶ 6.)   Plaintiff alleges that the Union collected dues on his behalf from his employer "so that he might attain a pension upon reaching retirement."   (Id.)

Plaintiff alleges that he was injured on the job on March 1, 1994 when his company van

---

[1] Excerpts from the amended complaint are reproduced here exactly as they appear in the original.   Errors in spelling, punctuation, and grammar have not been corrected or noted.

was rear ended and his unspecified injuries "left him disabled" and "unable to return to work." (Id. ¶ 7.)   Plaintiff claims that he was classified as "[p]ermanent partial disabled on March 26, 1996 by the Workers Compensation Board."   (Id. ¶ 10.)

According to the Amended Complaint, in July and August of 1996, Plaintiff had discussions with "multiple Union trustee personnel regarding his permanent disability status." (Id. ¶11.)   Plaintiff alleges that he spoke to:   "Mr. Richard Volpe the Union trustee an[d] Frank the Employer Trustee," and the "driver delegate Bob Revello where he advise[d] me to go to the Union Office."   (Id. ¶ 11.)   The complaint also allege that Plaintiff "was giving assurance that a 1/2 pension in definite an[d] not to worry."   (Id.)   The complaint does not identify who made this statement.

Plaintiff also alleges that he "was not told by anyone at the time he was not eligible for a pension after his disability."   (Id. ¶ 12 (emphasis alleged).)

Plaintiff next alleges that, in 1997, he contacted by Volpe and advised that Hartz was going out of business and that, as a Union member, he would receive a "payout."   In 1999, Plaintiff received a check in the sum of $7,000.   (Id. ¶ 13.)

Nearly twenty years later, in or about June 8, 2018, Plaintiff alleges that he applied for Social Security Disability benefits following a quadruple bypass surgery and "was approved for $1,400 with medica[r]e benefits after two years."   (Id. ¶ 14.)   Plaintiff inquired about receiving a pension from his Union and "social security administration personnel" suggested that he contact the New York State Employee Benefits Department.   (Id. ¶¶ 14-15.)   Plaintiff contacted that department and alleges he followed the advice "to contact the Union an request from them my Summary Plan Description and my benefit statement in a certified letter."   (Id. ¶ 15.)

On March 19, 2019, Plaintiff received a letter from the Fund Administrator, Camille Luisi

("Luisi"), informing him that "ten years of pension credits was required to have vested rights in the plan and not incur a permanent break in service."[2]   (ECF No. 16-10).   The letter also stated that Plaintiff was unable to obtain a pension as he had accumulated only seven years of service and had also incurred a permanent break in service in the calendar year ended on December 31, 2002, and, thus, was unable to obtain the pension.   (Id.)   The letter explained to Plaintiff that: (1) he had earned six (6) Pension Credits from September 14, 1987 through March 2, 1995; and (2) had received the maximum of 22 weeks of pension credit to account for his disability, which provided him with an one (1) Pension Credit for 1994.   (Id.)

On September 3, 2020, Plaintiff applied to the Fund for a pension and, by letter dated October 5, 2020 from Luisi, he was informed that his application was denied.   (Id. ¶¶ 17-18.) This letter reiterated that Plaintiff had only earned seven Pension credits.   (ECF No. 16-11.)   This letter explained that, pursuant to a November 2016 amendment, the Plan ceased awarding disability pensions and that, even under the 2014 Plan Rules that were in effect prior to the November 2016 amendment, Plaintiff failed to qualify for a Disability Pension because those rules required Plaintiff to have either earned:   (1) 15 Pension Credits; or (2) 10 Pension Credits along with, among other requirements, a social security disability award.   (ECF No. 16-11.)   This letter explained that Plaintiff was also disqualified from obtaining a pension for the additional reason that the Pension Credits that he had earned were permanently cancelled because he experienced a "permanent break in service" and Defendant had no record that Plaintiff experienced a "total and permanent disability."   (Id.)

On November 2, 2020, Plaintiff, through counsel, appealed the Fund's decision denying

---

[2] Plaintiff's opposition papers include copies of this letter and other correspondence that is relied on and referenced in the Amended Complaint.   As such, the Court may consider such documents in deciding Defendant's motion to dismiss.

his application for pension benefits.   (ECF No. 16-12.)   Plaintiff's counsel argued that Plaintiff's benefits should have been determined based on the terms of the Plan that were in effect as of 1996 when Plaintiff was classified as "permanent partial disabled."   (ECF No. 16-12.)   On December 18, 2020, Plaintiff's appeal was denied by the Board of Trustees of the Fund.   According to the denial letter, based on the Plan Rules that were in effect in 1996, Plaintiff only earned seven (7) Pension Credits and seven (7) Vesting Credits and, therefore, did qualify for a Disability Pension or any pension.   (ECF No. 16-8.)

In the Amended Complaint, Plaintiff alleges that he is "entitled to a disability pension and not a regular pension because I know a regular pension you must meet the years requirement.   But a disability pension should not have the same requirements because becoming disable in the course of your employment should not disqualify a person from ½ their pension."   (Am. Compl. at 12.) Plaintiff alleges a single claim, pursuant to ERISA, seeking to recover compensatory damages in the sum of $142,000 representing the "wrongfully withheld [] pension owed to him by his service to the Union."   (Id. ¶¶ 22-23.)

**B.   Defendant's Motion to Dismiss**

After Defendant filed a pre-motion conference letter, the Court granted Defendant leave to file a motion to dismiss.   Defendant seeks dismissal of all of Plaintiff's claims, arguing, inter alia, that that Plaintiff lacks sufficient Pension Credits to qualify for a Disability Pension and that any claim based on the alleged oral "assurance" about a pension is not plausible.

In response to Defendant's motion to dismiss, Plaintiff filed a ten-page opposition brief[3] together with an additional 173-pages of exhibits.   (ECF No. 16.)   Plaintiff's opposition is

---

[3] Excerpts from Plaintiff's Opposition Brief are reproduced here exactly as they appear in the original.   Errors in spelling, punctuation, and grammar have not been corrected or noted.

difficult to comprehend.   It begins:

> I am asking the Court to look Carefully on the behalf of my Case, that the Defendant Bakery & Drivers Local 550 and Industry Health Benefit & Pension Fund have had a Collective Bargaining agreement Between my Employer The Ha. '" Mountain Company not to be in any corrupt planning for their employee. In (ARTICLE 4 ) of the Plan Document states an employee is entitled to Pension CREDITS PENSION CREDITS, PENSION CREDITS with an (S) which means more than one credit for someone who is not working in covered Employment periods with an (S) of absence from covered Employment are to be credited, which I never received CREDITS for, they gave me (one credit ) because one credit is only for who the Union Fund paid for their workers Compensation Benefit, which i have proof that Hartz Mountain Corp my employer paid for that Benefit not the Union Funds, (See Attached Letter from The Hartz Mountain Corp dated 4/22/2019 and this is where the Deceptiveness & Schemes of the Union arise from so one can fall for their traps. My employer have been Contributing funds for their employee with the union not to be i such traps, but so that their employee would receive a pension, or if their employee would become Permanent disable a Pension would be Granted, from the Bakery & Driver Local 550 and Industry Health Benefit & Pension fund. where (not under the agreement) their would be Schemes an Corrupt Plan Document written for their employees. The document has a Disability Pension and a Pension Benefit that has the same Qualification to them which is wrong an Deceptive concept to them.

(ECF No. 16-5 at 2.)   Plaintiff's opposition papers reference various claims and allegations that are not raised in his Amended Complaint, including purported claims for breach of fiduciary duty and allegations that Defendants tampered with, and failed to provide, plan documents.   For example, Plaintiff opposition states:

> I am asking the court to see in my case that many deceptive an Schemes under the Plan Document have permits the Plaintiff to go to court for my disability pension, but i am grateful despite all that I have attained over the years, i am here alive not giving up because of my rights. I was told by a council giving up is what they want.

> I am asking the Court to see Defendant allege that i am Claiming Discrimination, which the Trustee have Breach their Fiduciary Duty according to the plan which is a discriminatory Behavior.

(Id.)

## II.   DISCUSSION

### A.   Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when the plaintiff fails to allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Fed. R. Civ. P. 12(b)(6). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

While a court is required to read a plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570,; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Indeed, pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). However, the court "need not argue a pro se litigant's case nor create a case for the pro se which does not exist." Ogunmokun v. Am. Educ. Servs./PHEAA, No. 12-CV-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014). Determining whether a complaint or

amended complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679; accord Harris, 572 F.3d at 72.

## B.  Plaintiff's Denial of Benefits Claim

Pursuant to ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary of a retirement plan governed by ERISA may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Essentially, plaintiffs assert under this section a 'contractual right under a benefit plan.'" Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 82 (2d Cir. 2001) (quoting Strom v. Goldman, Sachs & Co., 202 F.3d 138, 142 (2d Cir. 1999)).

Whether Plaintiff was improperly denied pension benefits, as alleged, requires review of the plan language governing entitlement such benefits.   While Plaintiff did not append the relevant plan documents to the amended complaint, his complaint incorporates them by reference. (Am. Comp. ¶¶ 15-22.)   Defendant has submitted copies of both the 2014 Rules and the 1993 Rules.   Plaintiff does not dispute that the 1993 Rules govern his claim for pension benefits, and explicitly admits that the copy of the 1993 Rules provided by Defendant is the "true copy" of his "plan."   (ECF No. 18.)   Given that there is no dispute as to the governing plan language, together with the fact that such language is critical to analyzing Plaintiff's denial of benefits claim, the Court will consider these exhibits.   See, e.g., Neurological Surgery, P.C. v. Travelers Co., 243 F. Supp. 3d 318, 325 (E.D.N.Y. 2017) ("When deciding a motion to dismiss, a court may consider . . .  ERISA plan documents."); Curran v. Aetna Life Ins. Co., No. 13-CV-00289(NSR), 2013 WL 6049121, at *7 (S.D.N.Y. Nov. 15, 2013) ("Specifically in the ERISA context, '[b]ecause the Plan

is directly referenced in the complaint and is the basis of this action, the Court may consider the Plan in deciding the motion to dismiss'") (quoting Faber v. Metropolitan Life Ins. Co., No. 08-CV-10588(HB), 2009 WL 3415369, at *1 n.1 (S.D.N.Y. Oct. 23, 2009)).[4]

As explained below, Plaintiff's denial of benefits claim under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) fails because the terms of the Plan establish a minimum Pension Credit requirement that Plaintiff clearly has not met. Weinreb v. Hospital For Joint Diseases Orthopaedic Institute, 404 F.3d 167, 170 (2d Cir. 2005) ("A suit for benefits due under the terms of an ERISA-governed plan necessarily fails where the participant does not qualify for those benefits.").

### 1. Defendant is Not Relying on Plaintiff's Alleged Permanent Break in Service

If a person has a permanent break in service, any pension credits that he had earned will be permanently cancelled. (See 1994 Rules § 4.03.) While Plaintiff addresses, at length, whether he suffered a permanent break in service, it is unnecessary to resolve this question to decide this motion. Although the Fund's March 2019 and October 2020 letters relied on Plaintiff's alleged permanent break in service as one reason for finding that Plaintiff did not qualify a pension, Defendant does not rely on this alleged break in service for purposes of the instant motion to dismiss. Instead, Defendant simply contends that Plaintiff did not obtain enough credits to receive a pension. Notably, Defendant's denial letters also relied on this ground in denying Plaintiff's pension application.

---

[4] Apart from these documents, the other exhibits filed by the parties raise matters outside of the amended complaint and that are not integral thereto. Thus, the Court will not consider them. See Goel, 820 F.3d at 559-60 (finding that affidavit which was not integral to the complaint could not be considered on motion to dismiss).

### 2.   Plaintiff is Not Eligible for a Pension under the 1993 Rules

The 2014 Rules provide, in relevant part, that: "The rights of Employees who left Covered Employment before December 31, 2014, are governed by the terms of the Plan in effect at the time they left Covered Employment."   (2014 Rules at 1.)   Because Plaintiff left Covered Employment before December 31, 2014, his rights under the Plan are governed by the 1993 Rules.   (See ECF No. 16-1 at 10.)

Section 3.18 of the 1993 Plan, which governs Disability Pensions, states:

> A Participant may retire on a Disability Pension if:
>
> (a)     he has at least 15 Pension Credits, and
>
> (b)     he has completed at least 11 weeks of Service within the 12 month period immediately prior to becoming permanently and totally disabled.

(1993 Rules § 3.18.)   The 1993 Plan also provides for other types of pensions.   In order to qualify for a Regular Pension under the 1993 Plan, a Participant needs be at least 65 years old and has least 15 Pension Credits.   (Id. § 3.02.)   The 1993 Plan also provides for a Basic Deferred Pension if the Participant has attained normal retirement age and has at least 10 Years of Vesting Credit. (Id. § 3.06.)

The following provisions in the 1993 Plan determine when a Participant qualifies for a Pension Credit under Section 4.01(b)(2)

Section 4.01(b)(2) provides:

> "[A] Participant shall be credited with one Pension Credit for each year in which he has at least 22 weeks in Covered Employment on which contributions to the Fund were payable, including credit for non-work periods as provided in Section 4.0l(c). If, in a Calendar Year, a Participant earns a Year of Vesting Credit but has worked less than 22 weeks in Covered Employment, he shall be credited with a prorated portion of a full Pension Credit in the ratio of his weeks of work in Covered Employment to 22 weeks.

(1993 Rules § 4.01(b)(2)).

Section 1.22 defines a period of "Work" as a "period in which an Employee <u>performed services</u> in Covered Employment for which he was paid or entitled to payment." (<u>Id.</u> § 1.22 (emphasis added).)

Finally, if an employee is unable to work for a period of time due to a disability, the employee can qualify for up to 22 weeks of Pension Credit if he meet the requirements of Section 4.01(c). Section 4.01(c), entitled "Credits for Non-Work Periods," states:

> This section recognizes certain periods when an Employee is not actually working in Covered Employment but is to receive Pension Credits just as if [he] were working in Covered Employment. Periods of absence from Covered Employment are to be credited (except for the purpose of Section 4.0l(a)(l)) as if they were periods of work in Covered Employment only if they were due to disability for which accident and sickness benefits were paid by the Bakery Drivers Local 550 Health Benefits Fund, or for which the Employee was compensated under the Workers' Compensation Law. In such case Pension Credit up to a maximum of 27 weeks for disabilities which commenced prior to January 1, 1976 and 22 weeks for disabilities which commenced subsequent to January 1, 1976 shall be given for any part of the period of such disability as may be required to establish a year of Pension Credit for the year in which the disability commenced and/or the following year.

(<u>Id.</u> § 4.01(c).)

Under the 1993 Rules, Plaintiff needed, among other things, 15 Pension Credits to qualify for a disability pension. Based on the allegations in Plaintiff's Amended Complaint, he would

have only earned eight Pension Credits for the years 1987 through 1994.[5]   Moreover, even if the Court were to assume—contrary to the allegations in the Amended Complaint—that Plaintiff earned two additional Pension Credits for 1995 and 1996, his claim would still fail because he would only have ten (10) Pension Credits and, under the 1996 Rules, he needed fifteen (15) Pension Credits to receive a Disability Pension.   Plaintiff does not have enough Pension Credits to qualify for a Disability Pension or any other pension.[6]

Notably, Plaintiff never even identifies how many Pension Credits he believes he has earned.   In fact, he essentially concedes that he has not earned sufficient credits for a Disability Pension, but believes that disability pensions should have not the "same requirements" as a Regular Pension.   (Am. Compl. at 12.)

---

[5]   Based on the allegations in the Amended Complaint, Plaintiff would be entitled to one Pension Credit for 1987, but would not receive any Pension Credits for 1996 and 1997.   With respect to 1987, Defendant has consistently maintained that Plaintiff only began accumulating pension credit in September 1987 and that, therefore, Plaintiff does not qualify for a year of Pension Credit for 1987 because he worked less than 22 weeks that year.   However, in the Amended Complaint, Plaintiff alleges that he began working on August 3, 1987.   As such, the Court assumes that Plaintiff worked the requisite 22 weeks in 1987 to qualify for a Pension Credit for that year.

  With respect to 1995 and 1996, Paragraph 6 of the Amended Complaint alleges, in conclusory fashion, that Plaintiff "worked from August 3, 1987 to March 27, 1996.   However, Plaintiff has not plausibly alleged that, in 1995 and 1996, he actually performed "work" as that term is defined in the 1993 Rules.   Later in the Amended Complaint, Plaintiff provides more detail about his employment and alleges that that his injuries from an accident on March 1, 1994 left him disabled and "unable to return to work."   (Am. Compl. ¶ 7.)   For Plaintiff to have "work[ed]" during 1995 and 1996, he would have had to "perform[] services in Covered Employment for which he was paid or entitled to payment."   (1993 Rule § 1.22.)   The Amended Complaint, however, indicates that Plaintiff was unable to work in 1995 and 1996.

[6]   The 1993 Rules also provide for a Deferred Pension if the employee has, inter alia, ten (10) Years of Vesting Credit.   A "Vesting Credit" is different than a "Pension Credit."   Plaintiff does not contend that he obtained ten years of Vesting Credit.   In any event, the relevant provisions of the 1994 Rules confirm that, based on the allegations in his complaint, he would have received, at best, nine (9) years of Vesting Credit based on his allegation that he was employed from August 3, 1987 to March 26, 1996.   (See 1993 Rules ¶ 4.02 ("A Participant shall earn one Year of Vesting Credit for each Calendar Year during the Contribution Period (including periods before he became a Participant) in which he completed at least 22 weeks of Service in Covered Employment; see id. ¶ 1.07 (defining "Covered Employment"); id. ¶ 1.18 (defining "Service").   Plaintiff would not receive a year of Vesting Credit for 1996 as his employment ended on March 26, 1996.

At some points in his papers, Plaintiff appears to argue that he is entitled to "multiple" additional credits under Section 4.01(c).   Plaintiff, however, does not identify how many of these additional credits he should receive.

Section 4.01(c) only allows Plaintiff to obtain one (1) Pension Credit for 1994.   Although Plaintiff worked less 22 weeks in 1994, § 4.01(c) grants him a maximum of 22 weeks of Pension Credit for the time he was out of work due to his disability, which allows him to qualify for one (1) Pension Credit for 1994.[7]

Plaintiff's argument that he should receive "multiple credits" of an unspecified amount is meritless.   Plaintiff stresses that Section 4.01(c) is entitled "Credits for Non-Work Periods" and that the plural form of "Credit" is used.   As such, he argues that he is entitled to multiple credits. The text of Section 4.01(c), however, makes clear that, given Plaintiff's circumstances, he is only entitled to a single additional credit.

Plaintiff also appears to contend that he is entitled to additional Pension Credits because Hartz, rather than the Fund, paid for his worker's compensation benefits.   This confusing argument is meritless.   (ECF No. 16-5 at 9.)   These additional facts are not alleged in the Amended Complaint and, even if they had been, they do not help Plaintiff.   Section 4.01(c) provides up to 22 weeks of Pension Credit for a period of absence only if the absence was "due to disability for which accident and sickness benefits were paid by the Bakery Drivers Local 550 Health Benefits Fund, or for which the Employee was compensated under the Workers'

---

[7]  Even if the Court were to assume that Plaintiff actually "worked" through March 27, 1996, he would still have, at best, only obtained a total of ten (10) Pension Credits.   Under this scenario, Plaintiff would receive nine (9) Pension Credits for the years 1987 through 1995 because he worked at least 22 weeks in those years.   The Court assumes, for the sake of argument, that Plaintiff could also qualify for one (1) additional Pension Credit for 1996 based on Section 4.01(c) even though, under this scenario, Plaintiff would have worked less than 22 weeks in 1996.

13

Compensation Law." (1993 Rules § 4.01(c)). Plaintiff's received Worker's Compensation benefits and, thus, falls under this provision. Moreover, even if Hartz's payment of these benefits somehow rendered § 4.01(c) inapplicable, that would not help Plaintiff as it would simply mean that he would not be entitled to any Pension Credit for the time when he was absent due to his disability.

### 3. Plaintiff is Also Not Eligible for a Pension under 2014 Rules

Plaintiff's opposition papers also contain a copy of the current Summary Plan Document ("SPD") for the Plan. (ECF No. 16-13; see Def.'s Reply Mem. at 11.) This SPD summarizes the 2014 Rules that are currently in effect. As such, the rules summarized in this SPD do not govern Plaintiff's claims because the 1993 Rules, and not the 2014 Rules, determine whether Plaintiff is eligible for a pension. In any event, even assuming, for the sake of argument, that this SPD and the 2014 Rules govern Plaintiff's claim, Plaintiff's request for a disability pension still fails. The SPD states:

You're entitled to a Disability Pension if you:

□ are "totally and permanently disabled," and

□ One of the following:

□ have at least 15 Pension Credits, or

□ have at least 10 Pension Credits and the US Social Security Administration has determined you are entitled to a Social Security award based on total and permanent disability, and

□ completed at least 11 weeks of service within the 12 months immediately before you became disabled.

(Id.). These same requirements are set forth in the 2014 Rules. (2014 Rules § 3.20.)

Plaintiff does not qualify for a Disability Pension under the 2014 Rules. As explained

14

earlier, based on the allegations in the Amended Complaint, Plaintiff has only earned 8 Pension Credits.   And, even assuming, for the sake of argument, that Plaintiff earned 10 Pension Credits and that the 2018 determination by the Social Security Administration might permit Plaintiff to qualify with only 10 Pension Credits, he must still meet the additional requirement that he completed "at least 11 weeks of service within the 12 months <u>immediately before</u> he became <u>totally and permanently disabled</u>."   (2014 § 3.20.)   Plaintiff has not plausibly alleged that met this requirement.   According to the Amended Complaint, the Worker's Compensation Board determined that he was "Permanent <u>partial</u> disabled" in 1996.   (Am. Compl. ¶ 10 (emphasis added).)   The Worker's Compensation Board did not find Plaintiff to be "<u>totally</u> and permanently disabled."   Although the Social Security Administration found that Plaintiff was completely disabled <u>in 2018</u> after his bypass surgery, that determination does not plausibly indicate that Plaintiff was "totally and permanently disabled" <u>in 1996</u>.

As explained above, any claim by Plaintiff for a pension based on either the 1993 Rules or the 2014 Rules clearly fails.   Under ERISA, a participant in a pension plan can "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).   "The statutory language [of ERISA] speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them." <u>CIGNA Corp. v. Amara</u>, 563 U.S. 421, 436 (2011) (explaining that while ERISA § 502(a)(1)(B) "allows a court to look outside the plan's written language in deciding what [a] term[ ] [is], i.e., what the language means," it does not "authorize[ ] a court to alter [that] term[ ]").   Given that Plaintiff has not met the criteria for a pension under the applicable 1993 Rules, he has failed to show that Defendant breached a contractual right owed to him under the terms of the Plan.   Thus, his denial of benefit

claim under Section 502(a)(1)(B) of ERISA fails and is dismissed.[8]

## C.      Breach of Fiduciary Duty Claim

Plaintiff did not allege a breach of fiduciary duty claim in the Amended Complaint.   Thus, no such claim is properly before the Court.   Even if the Court were to liberally construe Plaintiff's allegations, Plaintiff has not alleged a plausible ERISA claim based on a breach of fiduciary duty.

Section 502(a)(3) of ERISA enables a participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief. . . ." 29 U.S.C. § 1132(a)(3). "Section 502(a)(3) has been characterized as a 'catch-all' provision which normally is invoked only when relief is not available under [ERISA] § 502(a)(1)(B)." Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 578 (2d Cir. 2006) (citing Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) defendant was a fiduciary who, (2) was acting within his capacity as a fiduciary, and (3) breached his fiduciary duty.   See ERISA § 409, 29 U.S.C. § 1109; In re AOL Time Warner, Inc. Sec. and "ERISA" Litig., No. 02–CV–8853, 2005 WL 563166, at *3 (S.D.N.Y. Mar. 10, 2005).   A plaintiff must also allege that the defendant's breach of its fiduciary duty "resulted in harm to the plaintiff." Killian v. Concert Health Plan, 742 F.3d 651, 658 (7th Cir. 2013).

Plaintiff has not plausibly alleged that Defendant (or any of its agents) breached fiduciary duties under ERISA.   Plaintiff's opposition papers assert that the "Bakery & Drivers Local 550 and Industry Health Benefit & Pension Fund have Breach[ed] their Fiduciary Duty to my

---

[8] Insofar as Plaintiff cites oral representations to establish that he is entitled to a disability pension, that claim fails. It is well-settled that "oral promises are unenforceable under ERISA and therefore cannot vary the terms of an ERISA plan." Perreca v. Gluck, 295 F.3d 215, 225 (2d Cir. 2002).   Thus, as a matter of law, Plaintiff may not rely on an oral promise to modify the terms of an ERISA plan.   Other potential claims based on these alleged oral representations are addressed below.

Disability pension."   (ECF No. 16-5 at 2.)   Plaintiff's opposition also states:

> I am asking the Court to see in my case that many deceptive an Schemes under the Plan Document have permits the Plaintiff to go to court for my disability pension, but i am grateful despite all that i have attained over the years, i am here alive not giving up because of my rights. I was told by a council giving up is what they want.
>
> I am asking the Court to see Defendant allege that i am Claiming Discrimination, which the Trustee have Breach their Fiduciary Duty according to the plan which is a discriminatory Behavior.
>
> (Id. at 2.)

To the extent Plaintiff is claiming that Defendant breached its fiduciary duty by designing the Plan in a manner that disadvantaged Plaintiff—including the rules that precluded disabled individuals with less than 15 Pension Credits from obtaining a Disability Pension—that claim clearly fails.[9]   Cf. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444, 119 S. Ct. 755, 763, 142 L. Ed. 2d 881 (1999) ("In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets.").

As explained below, to the extent that Plaintiff is claiming a breach of fiduciary duty premised on various oral statements alleged in the Complaint (and asserted in his opposition brief), that claim also fails.

---

[9]   Relatedly, any claim by Plaintiff that the Plan violates the Americans with Disabilities ("ADA") or the New York State Human Rights Law ("NYSHRL") is similarly meritless.   Neither the ADA nor the NYSHRL require Defendant to provide the laxer qualifications for a Disability Pension that Plaintiff apparently seeks to impose through this lawsuit.   The ADA and the NYSHRL do not prevent a pension plan from requiring an employee to accumulate fifteen years of credit before they can qualify for a disability pension.   See Castellano v. City of New York, 142 F.3d 58, 70 (2d Cir. 1998) ("[T]he ADA [does not] 'require that service retirement plans and disability retirement plans provide the same level of benefits, because they are two separate benefits which serve different purposes.'   The ADA requires only that persons with disabilities have the opportunity to receive the same benefits as non-disabled officers who have given an equivalent amount of service."   (quoting EEOC Notice No. 915.002 at 2)).

**D.**      **The Oral Statements Alleged By Plaintiff Do Give Rise to Any Plausible Claims**

Plaintiff has not plausibly alleged a promissory estoppel claim or a breach of fiduciary duty claims based on the various oral statements cited in his Amended Complaint (and in his opposition brief).

A plaintiff may state a promissory estoppel claim under ERISA if he can allege (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, (4) an injustice if the promise is not enforced; and (5) extraordinary circumstances.   Weinreb v. Hospital for Joint Diseases Orthopaedic Inst., 404 F.3d 167, 172 (2d Cir. 2005) (internal quotation marks and citation omitted); see also Sullivan-Mestecky v. Verizon Commc'ns Inc., 961 F.3d 91, 99 (2d Cir. 2020) (discussing remedy of promissory estoppel in the context of breach of fiduciary duty claim).

The Second Circuit added the fifth element—extraordinary circumstances—"[t]o minimize 'the danger that commonplace communications from employer to employee will routinely give rise to employees' rights beyond those contained in formal benefit plans.'"   Egan v. Marsh & McLennan Cos., No. 07 Civ. 7134 (SAS), 2008 WL 245511 (S.D.N.Y. Jan. 30, 2008) (citing Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 151 (2d Cir. 1999)); see also Couch v. New York Daily News Co., No. 19-CV-5903(ENV)(ST), 2021 WL 7448476, at *3 (E.D.N.Y. Mar. 23, 2021) ("The ERISA-specific 'extraordinary circumstances' requirement serves 'to lessen the danger that commonplace communications from employer to employee will routinely be claimed to give rise to employees' rights beyond those contained in formal benefit plans.'" (quoting Aramony, 191 F.3d at 151).   Indeed, given the "extraordinary circumstances" requirement, recovery is "limited . . . to circumstances where a defendant induced an irrevocable action on the part of a claimant."   Fershtadt v. Verizon Commc'ns Inc., No. 07-CV-6963 (CM), 2010 WL 571818, at *14 (S.D.N.Y. Feb. 9, 2010); see also Schonholz v. Long Island Jewish Med.

18

Ctr., 87 F.3d 72, 77 (2d Cir. 1996) (extraordinary circumstances where defendant's promise of severance benefits induced the plaintiff's retirement).   "Extraordinary circumstances must involve intentional inducement or deception that inures to the defendant's benefit, such as a promise made with the intention of inducing action or forbearance by plaintiff, which induced action or forbearance inures to the benefit of the defendant, and the defendant later reneges on the promise."   Jarosz v. Am. Axle & Mfg., Inc., 372 F. Supp. 3d 163, 183 (W.D.N.Y. 2019), amended, No. 12-CV-39S, 2019 WL 12239557 (W.D.N.Y. May 31, 2019) (internal quotation marks and citation omitted).

With respect to any breach of fiduciary claim, a plan administrator can violate its fiduciary duties if it knowingly or intentionally misleads a beneficiary about the terms of a plan.   In re DeRogatis, 904 F.3d 174, 194 (2d Cir. 2018).   "To establish a breach of fiduciary duty based on unintentional misrepresentations, [a plaintiff] must satisfy [a] more restrictive standard[:] . . . Fiduciaries have a duty to 'provide [participants] with complete and accurate information' about plan benefits, and they breach that duty if their agent inadvertently misleads participants about a benefits question on which the summary plan description, too, is unclear."   Id. at 194.

As explained below, Plaintiff has not plausibly alleged any of the necessary elements for promissory estoppel.   And, to the extent that Plaintiff is claiming a breach of fiduciary duty premised on the various statements alleged in the Complaint (and asserted in his opposition brief), that claim fails as well.

Plaintiff has not plausibly any alleged that an agent of Defendant made any promises or misrepresentations about his entitlement to a Disability Pension.   The Amended Complaint alleges Plaintiff spoke to "multiple Union trustee personnel," including a Trustee named Richard Volpe and another Trustee named "Frank" "regarding [Plaintiff's] permanent disability status."

19

(Am. Compl. ¶11.)   Plaintiff, however, does not allege what these individuals told him.   Plaintiff also alleges that a "driver delegate" named "Bob Revello" "advise[d] me to go to the Union Office."   (Id. ¶ 11.)   That is not a promise or misrepresentation.

Finally, the Amended Complaint vaguely alleges that Plaintiff "was giv[en] assurance that a 1/2 pension in definite an[d] not to worry."   (Id.)   The Amended Complaint, however, does not identify who made this statement.   As such, Plaintiff has not plausibly alleged that this statement was made by an agent of Defendant.[10]   Notably, Defendant stressed, in both its November 29, 2021 pre-motion conference letter and its motion to dismiss, that Plaintiff did not identify who gave Plaintiff this alleged "assurance."   In response, Plaintiff asserts, in his opposition brief, that Trustee Volpe and the Trustee named "Frank" "advise[d] me that they will be working with the trustee about my disability pension for me."   (ECF No. 16-5 at 5.)   This statement does not involve any promise or misrepresentation about Plaintiff's purported eligibility for a Disability Pension.[11]

Even if Plaintiff could identify who made this statement, Plaintiff would still not have a plausible claim based on this vague "assurance."   Plaintiff does not allege that he relied on this alleged "assurance" he received or was harmed by it in any fashion.   Plaintiff says nothing—in either his Amended Complaint or his opposition papers—about what Plaintiff did (or refrained from doing) based on this alleged "assurance."   Other than mentioning that he discussed—and

---

[10]   Plaintiff has also not plausibly alleged that the person who made this statement knew that it was incorrect or intended to mislead Plaintiff.

[11]   Plaintiff's opposition brief also asks the Court "to Grant an Affidavit to a Sworn Statement and to Testify what was told to me by the Trustee of the Bakery Drivers Local 550 and industry Health Benefit & Pension fund. Mr. Richard J. Volpe the Union Chairman in 1996 to the best of my Recollection an not be Dismiss."   (ECF No. 16-5 at 3, 5.)   To the extent Plaintiff is seeking discovery, that request is denied.   He is not entitled to any discovery unless he has first alleged plausible claims.

ultimately received—an unrelated payout from the Union in the late 1990s. the Amended Complaint is silent about the time period of 1996 to 2018.   Moreover, even if Plaintiff could establish other elements of a promissory estoppel claim, the factual allegations here do not plausibly constitute extraordinary circumstances.

The Court also notes that, in his opposition brief, Plaintiff alleges that Fund Administrator Camille Luisi told him in 1996 that "in about ten years the Funds would be broke, but as of 2022 the Funds still exist."   (ECF No. 16-5 at 6.)   This alleged statement does not involve any misrepresentation or promise about his eligibility for a Disability Pension.   The Court also notes that Plaintiff has not alleged how he was injured, in any fashion, by this alleged statement. Finally, Plaintiff has not plausibly alleged that this incorrect predication about the Fund's potential financial viability ten years into the future constitutes a breach of fiduciary duty.[12]

As Plaintiff has not stated a plausible promissory estoppel claim or breach of fiduciary duty claim, those claims are dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

**E.   Defendant's Alleged Tampering with Documents and Failure to Provide Requested Documents**

Plaintiff's opposition brief also contends that Defendant sent him tampered documents or failed to provide documents he requested.   Plaintiff, however, did not allege these claims in his Amended Complaint.   As such, these claims are not properly before the Court and, as explained below, the Court does not grant Plaintiff leave to file a Second Amended Complaint.

Additionally, these claims are meritless.   For example, Plaintiff asserts that Defendant

---

[12]   The statements referenced above from Luisi and the two Trustees are contained only in Plaintiff's opposition brief and were not alleged in Plaintiff's complaint.   Even assuming, for the sake of argument, that the Court should still consider these purported statements, they are still patently insufficient to allege any plausible claims.

gave him a "tampered" plan document.   (ECF No. 16-5 at 4.)   In support of this claim, Plaintiff

points out that the SPD he received from Defendant in August 2020 uses certain different language

than the 1993 Rules.   However, the SPD Plaintiff received in August 2020 is the current SPD,

which corresponds to, and summarizes, the 2014 Rules.   The current SPD was supposed to

"simplify and explain the terms" of the current "plan"—in this case, the 2014 Rules.   See Workers

of Am. v. NYNEX Corp., 205 F. Supp. 2d 224, 226 (S.D.N.Y. 2002).   The discrepancies Plaintiff

cites do not suggest that Defendant falsified or tampered documents.   Plaintiff's opposition brief

also appears to argue that Defendants failed to provide Plaintiff with the plan document he

requested in July 2020.   However, Plaintiff's July 12, 2020 letter simply requested a copy of "the

Summary Plan Description."   (ECF No. 16-24.)   Defendant properly responded to that request

by providing a copy of the current SPD.

Furthermore, Plaintiff is also precluded from seeking penalties for any alleged failure to

provide the requested plan documents because, to bring such a claim, Plaintiff must first have a

"colorable claim that (1) he . . . will prevail in a suit for benefits, or that (2) eligibility requirements

will be fulfilled in the future."   Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117–18

(1989).   As Plaintiff's underlying claims addressed above are clearly meritless, he does not have

any such "colorable" claim.   See Yablon v. Stroock & Stroock & Lavan Ret. Plan & Tr., No. 01-

CIV-452, 2002 WL 1300256, at *9 (S.D.N.Y. June 11, 2002) ("Since all of plaintiff's substantive

claims must be dismissed, plaintiff cannot be said to have had any 'colorable' claims, and

[therefore the plaintiff's claims seeking penalties for failure to provide plan documents] must

therefore be dismissed as well."), aff'd, 93 F. App'x 329 (2d Cir. 2004), opinion amended and

superseded, 98 F. App'x 55 (2d Cir. 2004).

**F. State Law Claims**

To the extent Plaintiff is alleging state law claims for breach of contract and promissory estoppel, those claims must be dismissed.   It is well-established that state law claims for breach of contract and promissory estoppel are pre-empted by ERISA.   See 29 U.S.C. § 1144 (a) (ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); see also California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324 (1997) (The Supreme Court has "long acknowledged that ERISA's pre-emption provision is clearly expansive.") (quotation marks and citation omitted).   Thus, because Plaintiff's state law claims for breach of contract and promissory estoppel are pre-empted by ERISA, they fail as a matter of law and are thus dismissed.

**G.   Leave to Amend**

Generally, a pro se plaintiff will be given at least one opportunity to amend his complaint if his pleading "gives any indication that a valid claim might be stated."   Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted); see Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").   It is well settled, however, that "leave to amend a complaint need not be granted when amendment would be futile."   Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); see Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

The Court has carefully considered whether leave to amend is warranted here and, ultimately, declines to grant Plaintiff further leave to amend.

First, the circumstances here weigh against granting Plaintiff further leave to amend. Plaintiff has already been given an opportunity to amend his complaint once.   Additionally, the record makes clear that a lawyer represented Plaintiff when he appealed Defendant's denial of his pension application in the fall of 2020.   Given that Plaintiff had legal counsel in an earlier phase

23

of this dispute, Plaintiff should have alleged any potential claims in his first two complaints.   The Court also notes that, before Defendant moved to dismiss, Defendant filed a pre-motion conference letter that identified the flaws in Plaintiff's Amended Complaint.   (ECF No. 13.)   Plaintiff, however, did not seek to his amend his complaint in response to those arguments.   These factors alone warrant denying Plaintiff leave to file a second amended complaint.

Second, because the defects in Plaintiff's claims are substantive and would not be cured if afforded an opportunity to amend, leave to further amend the complaint is also denied on that ground.

## III.    CONCLUSION

For the forgoing reasons, the Amended Complaint fails to state a claim upon which relief may be granted.   Accordingly, the Court grants Defendant's motion to dismiss, (ECF No. 16), and dismisses the amended complaint with prejudice.   Leave to further amend the complaint is denied. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.   See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of Court shall mail a copy of this Order to the Plaintiff at his last known address and note such mailing on the docket.

**SO ORDERED.**

___/s/ (JMA)_____
Joan M. Azrack
Dated:   April 4, 2023                                     United States District Judge
            Central Islip, New York